**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL G.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 25 CV 5491<br><br>Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michael G. appeals the Commissioner of Social Security's decision denying his application for benefits. For the following reasons, plaintiff's motion to reverse the Commissioner's decision and grant benefits or, in the alternative, remand the Commissioner's decision [15] is denied, the Commissioner's motion for summary judgment [22] is granted, and the denial of benefits is affirmed.[1]

## Background

The history of plaintiff's application has been long and winding. In July 2013, plaintiff applied for a period of disability and disability insurance benefits, alleging an onset date of November 25, 2012. [12-3] 2648. The claim was denied initially, on reconsideration, and after a hearing before an administrative law judge ("ALJ"). [*Id.*]. That decision was appealed to the District Court for the Northern District of Illinois, and the case was remanded for further proceedings. *Glynn v. Berryhill*, No. 17 C 4312, 2018 WL 3785444, at *6 (N.D. Ill. Aug. 9, 2018). On remand, that same ALJ issued another decision denying plaintiff's claim. [12-3] 2648. That decision was again appealed and in January of 2020 the District Court granted an agreed motion for reversal with a remand for further proceedings. [*Id.*]. As the case had already been remanded once, the Appeals Council directed further proceedings to occur before a new ALJ. [*Id.*]. After a hearing before the new ALJ, plaintiff's claim was, for the third time, denied. [*Id.*]. Plaintiff then appealed to this Court. In August of 2024, this Court granted plaintiff's motion to reverse the ALJ's decision and remand this case for further proceedings. *Michael G. v. O'Malley*, No. 21 CV 580, 2024 WL 3791626, at *4 (N.D. Ill. Aug. 12, 2024). On remand, the ALJ held a hearing and denied plaintiff's

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [12-1], [12-2], [12-3], which refer to the page numbers in the bottom right corner of each page.

application for benefits for the second time (making four denials in total). [12-3] 2696. Plaintiff withdrew his request for a review by the Appeals Council in May of 2025 and the Appeals Council did not review plaintiff's case on its own within sixty days after the date of the ALJ's decision, *see* [*id.*] 2639–40, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955, 404.981, & 404.984. Plaintiff has appealed to this Court, and the Court has subject-matter jurisdiction under 42 U.S.C. § 405(g).[2]

As part of this fourth denial, the ALJ reviewed plaintiff's claim in accordance with the Social Security Administration's five-step evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date. [12-3] 2651. At step two, the ALJ determined that plaintiff had the following severe impairments: degenerative disc disease and fibromyalgia [*Id.*] 2652–57. At step three, the ALJ concluded that plaintiff's impairments did not meet or equal the severity of a listed impairment. [*Id.*] 2657–58. Before turning to step four, the ALJ ruled that plaintiff had the residual functional capacity (RFC) to perform light work, except that plaintiff: (1) should never climb ladders, ropes or scaffolds; (2) could climb ramps and/or stairs, balance, stoop, kneel, crouch and/or crawl no more than occasionally; (3) could reach, handle and finger no more than frequently; (4) should avoid concentrated exposure to vibration and hazards like unprotected heights and dangerous machinery; and (5) was limited to performing simple and routine tasks on a sustained basis with only routine breaks. [*Id.*] 2659–95. At step four, the ALJ held that plaintiff has no past relevant work. [*Id.*] 2695. At step five, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform: maker (167,000 jobs), collator operator (30,000 jobs), and router (22,000 jobs). [*Id.*] 2695–96. Accordingly, the ALJ concluded that plaintiff was not disabled. [*Id.*] 2696.

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (citation modified).

Because plaintiff applied for benefits before March 27, 2017, the ALJ was required to apply the "Treating Physician Rule" to certain of plaintiff's medical treaters. *See e.g.*, *Maria P. v. Bisignano*, No. 24 CV 3530, 2026 WL 594778, at *2 (N.D.

[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge [9].

Ill. Mar. 3, 2026). This rule entitles a treating physician's opinion to controlling weight if the opinion is both well supported by medical findings and not inconsistent with other substantial evidence in the record. *Brown v. Colvin,* 845 F.3d 247, 252 (7th Cir. 2016); *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2019). "When controlling weight is not given, an ALJ must offer 'good reasons' for doing so, after having considered: (1) whether the physician examined the claimant, (2) whether the physician treated the claimant, and if so, the duration of overall treatment and the thoroughness and frequency of examinations, (3) whether other medical evidence supports the physician's opinion, (4) whether the physician's opinion is consistent with the record, and (5) whether the opinion relates to the physician's specialty." *Brown*, 845 F.3d at 252; *see also* 20 C.F.R. § 404.1527(c)(2).

## Discussion

Plaintiff argues that the denial of benefits should be reversed because (1) "the ALJ repeated the 'serious methodological errors' that pervaded his prior decision, in terms of his assessment of both opinion evidence and Plaintiff's subjective claims[;]" and (2) "[t]he ALJ erred in finding that a limitation to unskilled work would sufficiently accommodate Plaintiff's deficits in concentration, persistence, or pace." *See* [15] 13–20. The Court rejects both arguments.

### A. The ALJ's most recent decision corrects the errors identified by this Court in its prior remand.

In an August 2024 opinion, this Court remanded the ALJ's 2021 decision due to its "heavy emphasis on the lack of objective medical evidence corroborating" plaintiff's medical providers' opinions regarding plaintiff's inability to perform "essentially all work." *Michael G.*, 2024 WL 3791626, at *2–3. This Court explained that those medical opinions were based on plaintiff's Fibromyalgia diagnosis, meaning the cause or causes of plaintiff's disease are unknown, plaintiff's symptoms would fluctuate day to day, there is no cure, and, of greatest importance to disability law, plaintiff's symptoms are entirely subjective. *Id.* at 2 (citation modified). Accordingly, objective tests would typically be inadequate to determine the presence or severity of plaintiff's symptoms and plaintiff's subjective complaints were an allowable basis for his treating physicians' opinions. *Id.* at 2, 4. With that background in mind, the Court found that the ALJ's dismissal of plaintiff's treaters' medical opinions due to their failure to cite "objective medical evidence" was reversible error. *Id.* at 3.

Plaintiff argues that the ALJ's current opinion again demonstrates a "reliance upon an absence of objective evidence . . . so pervasive that it renders [h]is other attempted rationales unavailing." [15] 17. Plaintiff claims that this error affected both the ALJ's assessments of the medical opinions and plaintiff's subjective statements. The Court disagrees. While the ALJ did again discuss the lack of

objective medical evidence, [12-3] 2677, 2682, 2694, it was not the consideration[3] of the lack of objective medical evidence that led this Court to issue a remand, it was the ALJ's "extensive reliance" and "heavy emphasis" on that fact. *Michael G.*, 2024 WL 3791626, at *3–4.

In this most recent ALJ decision, rather than an extensive reliance on the lack of objective medical evidence, the ALJ supplemented his analysis by explaining that he rejected the medical opinions of plaintiff's treaters because their treatment notes did not document findings–or even subjective complaints from plaintiff–that would support their later opinions regarding plaintiff's functioning. After a review of the ALJ's decision, the Court finds that, because the ALJ has constructed an accurate and logical bridge between the evidence and his findings, his decision is supported by substantial evidence. As such, this Court must uphold that decision on judicial review even if the court might have decided the case differently in the first instance. *Colleen G. v. Kijakazi*, No. 23 C 0357, 2024 WL 216666, at *2 (N.D. Ill. Jan. 19, 2024).

1. The ALJ's weighing of medical opinions satisfies the substantial evidence and, where relevant, the treating physician standards.

The ALJ evaluated the medical opinions found in the record and explained the weight he assigned to each. Included in the record were opinions from: plaintiff's treaters, Dr. Bull, APN Wislander, and Dr. McElhinney, [12-3] 2660, 2665–66; an impartial medical expert who testified at plaintiff's 2019 hearing, Dr. Bajor, [*Id.*] 2667–68; and an impartial medical expert who testified at plaintiff's 2025 hearing, Dr. Silverman, [*Id.*] 2671–72.[4]

The ALJ assigned little to no weight to the opinions of plaintiff's treaters,[5] [*Id.*] 2660, 2662, 2664, 2686, 2691, 2693, all of whom opined that plaintiff had extreme limitations which would likely preclude essentially all work, *Michael G.*, 2024 WL 3791626, at *2. Regarding the independent medical experts who testified at plaintiff's

[3] In fact, the Seventh Circuit has recently confirmed that–even in disability claims premised on fibromyalgia–the ALJ is still required by law to consider the objective medical evidence. *Padua v. Bisignano*, 145 F.4th 784, 790 (7th Cir. 2025).

[4] The ALJ also evaluated the opinion of Dr. Carlton, who performed a consultative examination in November 2014, [12-3] 2652, and Dr. Hussain, who opined that plaintiff could return to work in 2013, [*Id.*] 2662–3. Plaintiff never discusses these medical opinions in his brief. Given that the ALJ found the Dr. Carlton's opinion of little value due to its vagueness (rather than its supportability and consistency), [*Id.*] 2665, and questioned Dr. Hussain's opinion for failure to consider all of plaintiff's impartments, [*Id.*] 2663, the Court infers that plaintiff does not take issue with the ALJ's analysis of these opinions.

[5] The Court notes that, when evaluating the opinions of the treating physicians, the ALJ did not explicitly list the § 404.1527(c) factors. However, plaintiff does not identify any factor he believes was improperly analyzed or even mention the required factors in his brief. [15] 16. In reading the ALJ's decision, the Court finds that the opinions were analyzed within the multifactor framework and thus will not reverse based on a failure to list the factors. *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *6 (7th Cir. Aug. 27, 2021).

hearings, the ALJ assigned significant weight to the concurring opinions of Doctors Silverman and Bajor that plaintiff had the ability to lift and carry twenty pounds occasionally (along with Dr. Bajor also specifying that plaintiff could lift ten pounds frequently). [*Id.*] 2686. Further, the ALJ assigned "greater weight" to Dr. Bajor's opinion that plaintiff had postural limitations and environmental restrictions,[6] but found Dr. Silverman was "entitled to the most weight with respect to standing and walking abilities[.]"[7] [*Id.*] 2692.

The relative weight to assign to each of these opinions is the task of the ALJ. *Karr,* 989 F.3d at 511. This Court's role is only to determine if his decision is supported by substantial evidence. *Id.* As the Court will explain below, the ALJ's decision includes the "logical bridge" necessary–from the record evidence to his conclusion–for this Court to review his findings regarding the weight he assigned each medical opinion in order for the Court to determine they were supported by substantial evidence. *Chambers v. Saul*, 861 F. App'x 95, 100 (7th Cir. 2021). As part of its review, the Court also acknowledges that the opinions of Dr. Bull and Dr. McElhinney were to be evaluated under the "treating physician rule" that was in place at the time of plaintiff's application.[8]

The ALJ assigned little to no weight to Dr. Bull's opinions, [12-3] 2660, 2662, 2664. Plaintiff's brief does not identify specific objections to the ALJ's evaluation of Dr. Bull's opinion but appears to argue that it was impermissibly rejected solely, or at least primarily, based on the lack of objective evidence. [15] 17. The Court disagrees. The ALJ explained that plaintiff's treatment records from Dr. Bull failed to even mention symptoms or limitations with certain parts of plaintiff's body that Dr. Bull later opined greatly limited plaintiff's ability to work. For example, Dr. Bull opined that plaintiff could only occasionally sit, stand, walk, drive, bend, and stoop while at the same time was limited to lifting 10 pounds with his right arm and only occasionally performing manipulative activities. [*Id.*] 2660. However, the ALJ noted that Dr. Bull's treatment notes only ever mentioned left-side pain and limitation and never documented any complaints about plaintiff's right side of his body nor difficulties with sitting, standing, walking, driving, bending, or stooping. [*Id.*] 2660–61 ("None of these treatment records contains complaints of any appreciable right upper extremity symptoms or functional limitations[] . . . [nor do they] contain complaints of difficulty with sitting, standing, walking, driving, bending, or stooping."). The ALJ also noted inconsistencies with Dr. Bull's opinion and the records

---

[6] "Dr. Silverman did not identify any work-related limitations on postural activities or exposure to environmental factors." [12-3] 2692.

[7] Dr. Bajor opined that the plaintiff "could sit for two hours at a time and a maximum of six hours in an eight-hour workday and . . . stand for thirty minutes at one time and a maximum of two hours of an eight-hour workday and he could walk for fifteen minutes at one time and a maximum of one hour of an eight-hour workday." [12-3] 2668.

[8] APN Wislander's opinion is not entitled controlling weight under the treating physician rule. *Baptist v. Kijakazi*, 74 F.4th 437, 444 n.4 (7th Cir. 2023) ("Opinions authored by nurse practitioners are not entitled to controlling weight under the treating physician rule.").

from other treaters around the same time. For example, on February 8, 2013, Dr. Bull opined that plaintiff could not move more than 5 pounds. [*Id.*] 2662; [12-1] 616. But at a February 7, 2013 appointment with Dr. Hussain at ORA Orthopedics, plaintiff reported only having 20% of his symptoms, that he was "feeling much better[,]" and that he "denies any weakness[.]" [12-3] 2662; [12-1] 297. The Court finds that the ALJ has explained why he found Dr. Bull's opinion unsupported by medical findings and inconsistent with other substantial evidence in the record. Thus, the ALJ has articulated "good reasons" sufficient to explain why he did not assign Dr. Bull's opinion controlling weight.

Regarding the ALJ's evaluation of Dr. McElhinney's opinion, plaintiff claims that the ALJ erred when assessing the opinion's supportability and consistency as well as failing to articulate the necessary "good reasons" for rejecting it. [15] 16. While the ALJ could have been clearer in his reasoning, the Court finds that the ALJ has met the low bar of minimally articulating his rationale. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

First, the ALJ explained that Dr. McElhinney did not provide any basis or cite specific medical evidence in support of the opined limitations and, after reviewing his treatment notes, the ALJ found no objective basis for those limitations:

> Neither APN Wislander nor Dr. McElhinney provided any rationale for their opinions regarding lifting and carrying restrictions or manipulative restrictions. And the evidence of record, including their own treatment records, do not support their opinions. The medical records do not document any appreciable difficulties, especially on an ongoing basis, with fine or gross manipulation or with reaching with the right upper extremity.
>
> . . .
>
> [T]he treatment notes from Dr. McElhinney documents limited discussion of subjective pain complaints (primarily "complaint of back hip shoulder and neck pain"), identification of current medications, and very limited physical examination of the spine, pelvis and sometimes the left upper extremity. Examinations indicating somatic dysfunction of the spine (and at times pelvis), but not evaluating manipulative functioning, neurologic functioning, and generally not involving any evaluation of the joints is of limited value. The findings in these treatment records provide no basis for valid opinions on the claimant's manipulative abilities (especially handling and fingering) and would make highly questionable any opinions on exertional abilities/limitations.

[12-3] 2686, 2688.

The ALJ's analysis here is different than the issue identified by this Court in the prior remand. The ALJ did not just point to the lack of objective tests, but rather the lack of any notations in the treatment notes documenting even subjective complaints that would support the extreme limitations opined by Dr. McElhinney. The ALJ also explained why he found Dr. McElhinney's opinion inconsistent with the record of plaintiff's activities of daily living ("ADLs"). [*Id.*] 2678. The Court is skeptical about reading too much into plaintiff's ADLs when evaluating the consistency of a medical opinion. *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020). However, as the ALJ adequately explained why he found the opinion unsupported by medical findings, any error in the consistency analysis is harmless. *Johnson v. Berryhill*, 745 F. App'x 247, 250 (7th Cir. 2018) (holding that treatment notes inconsistent with the eventual medical opinion are sufficient to give little weight to a treating physician);.*Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *6 (7th Cir. Aug. 27, 2021) ("[T]he ALJ gave . . . reduced weight to the primary care physician[] . . . who had stated an opinion . . . which was inconsistent with the records from the physician's office (which included several examination reports that indicated no significant findings)."). Accordingly, the Court finds that the ALJ has minimally articulated "good reasons" sufficient to explain why he did not assign Dr. McElhinney's opinion controlling weight.

Second, regarding the opinion of plaintiff's other treater, APN Wislander, the ALJ was not required to apply the treating physician rule. *Baptist v. Kijakazi*, 74 F.4th 437, 444 (7th Cir. 2023). Regardless, the ALJ's articulation of his reasoning for assigning little to no weight would satisfy even the treating physician standard. [12-3] 2686, 2691. First, the ALJ noted that APN Wislander skipped most of the first page of the impairment questionnaire which she used to provide her opinion. [*Id.*] 2665–66. As such, she did not answer if plaintiff's impairments were expected to last at least twelve months, if plaintiff was a malingerer, what plaintiff's symptoms were, nor what treatments and medications he had taken. [*Id.*]; [12-1] 754. Further, not only did APN Wislander neglect to cite any exam findings or treatment notes to substantiate her opinion, [12-3] 2666, she later authored a letter stating:

> Mr. Glynn is a patient of my practice. I have submitted all records to your office per signed release from the patient. The summary impairment questionnaire regarding functional abilities was completed on March 3, 2016 when I examined the patient. This was filled out based on Mr. Glynn's description of his condition. I have given all subjective information that is available on Mr. Glynn, Any further Information that I provide at this point would be strictly opinion based and I do not feel that is appropriate.

[12-1] 764.

The missing information on the opinion form combined with that letter led the ALJ to reasonably conclude that APN Wislander's opinion was not supported by her medical findings but rather was a recitation of plaintiff's statements regarding his limits and abilities–which the ALJ analyzed in another part of his decision. [12-3] 2691. Accordingly, the ALJ provided a logical bridge from the record evidence regarding APN Wislander's opinion to his decision of assigning it little to no weight.

While plaintiff raised objections to the ALJ's evaluation of several medical opinions in this section of his brief, he spends by far the most time objecting to the the opinion of Dr. Silverman. [15] 14–16. Plaintiff claims that Dr. Silverman's testimony "seemed determined to work around Seventh Circuit law as well as accepted medical precepts about fibromyalgia." [*Id.*] 14. Further, plaintiff described Dr. Silverman's opinion as "internally inconsistent, sometimes petulant, and largely based upon a 'because I said so' theory." [*Id.*] 14–15. Plaintiff's brief appears to raise complaints about Dr. Silverman's testimony itself, rather than how the ALJ evaluated Dr. Silverman's opinion. But the Court's role is not to evaluate medical opinions, it is to review the ALJ's decision for substantial evidence. *Ramos v. Kijakazi*, No. 22-2899, 2023 WL 4554539, at *3 (7th Cir. July 17, 2023) ("While a different expert might have appraised cognitive functioning differently, the ALJ was entitled to deem Dr. Brooks's testimony persuasive; it is not our role to 'reweigh evidence' for the ALJ.").

To the extent plaintiff is arguing that the objections he has raised regarding Dr. Silverman's opinion should have resulted in the ALJ assigning less weight to her opinion, the Court rejects that argument. It is true that Dr. Silverman discussed the lack of objective medical evidence regarding plaintiff's pain when explaining how she formulated her opinion. [12-3] 2733. However, she also discussed several other reasons–and supported those reasons by citing to plaintiff's treatment records–to support her opinion on plaintiff's exertional and postural limitations:

> The undersigned asked what factors Dr. Silverman would rely upon to assess fibromyalgia and the resulting functional limitations. Dr. Silverman testified that the crux of the matter in this claim is that there are several indications in the chart that the claimant is not completely cooperative in his physical exams, suggesting a psychological component to his pain. She noted that the neurologist had noted breakaway weakness, meaning that during muscle testing, the claimant was not fully activating the resistance. The claimant had been noted to have poor effort on exam (Exhibit 6F, p. 5). [Correct cite is Exhibit 5F, p. 5.] Dr. Silverman cited to Exhibit 20F, p. 4, which indicated the exam was limited with inconsistent effort grip and muscle strength. She stated this speaks to the claimant's reliability as an informant, counteracts his reliability as an informant. Dr. Silverman noted the rheumatologist

> observed that the claimant had no tremors in the arms when distracted (Exhibit 31F, p. 32). She stated that overall, the exams have been pretty normal. She said this calls into doubt the reliability of the claimant's oral testimonies.

[12-3] 2671–72.

In his most recent decision, the ALJ discussed Dr. Silverman's testimony at length and explained that he credited several–but not all–of her opinions because she "explained why . . . [she] recommended the specific" limitations and restrictions. [*Id.*] 2686; *see also* [*Id.*] 2691. While the ALJ did not use the terms "supportability" and "consistency" when evaluating Dr. Silverman's opinion, it is clear from his discussion that he assigned more weight to those of her opinions which he found were well supported and consistent and less weight to the opinions he found were not. *See Teresa L. v. O'Malley*, No. 21 CV 1775, 2024 WL 4041324, at *2 (N.D. Ill. Sept. 4, 2024); *Wachholz v. Kijakazi*, No. 20-CV-1412, 2022 WL 787932, at *5 (E.D. Wis. Mar. 15, 2022) ("[T]he ALJ only uses the word 'supported,' it is clear that the ALJ considered both how the opinions are supported by the objective evidence and how the opinions are consistent with the record as a whole."). Accordingly, the Court finds no reversible error in the ALJ's analysis of Dr. Silverman's opinion.

The ALJ evaluated Dr. Bajor's opinion in the same fashion as Dr. Silverman's opinion. He discussed her opinion at length, [12-3] 2667–69, 2685, assigned significant weight to her opinions that he found were well explained and supported by the record evidence, [*Id.*] 2686, 2688, 2692, and discounted her opinions that he determined were "not well supported by or consistent with the evidence of record," [*Id.*] 2691. Plaintiff does not identify any specific objection to the ALJ's analysis of Dr. Bajor's opinion. However, to the extent plaintiff argues that the analysis of her opinion also improperly relied on the absence of objective medical findings, [15] 17, the Court disagrees.

2. <u>The ALJ's assessment of plaintiff's subjective allegations is not reversible error.</u>

The ALJ found plaintiff's statements regarding the severity of his symptoms "not entirely credible . . . due to numerous exaggerations, inaccurate statements, and evidence suggestive of symptom magnification and/or poor effort." [12-3] 2679. Plaintiff claims[9] that the ALJ "doubled down on the" absence of objective medical evidence corroborating plaintiff's symptoms "and simply attempted to deflect from

[9] Plaintiff also states that "[t]he ALJ may not 'cherry pick' pieces of evidence that support a conclusion of disability while ignoring related evidence that undermines that conclusion." [15] 18. However, plaintiff never explains what evidence was allegedly ignored and, as such, the Court finds this argument waived. *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018) (holding "perfunctory and undeveloped" arguments waived).

those errors by conjuring up inconsistencies and purportedly false statements [from plaintiff].” [15] 19.

The Seventh Circuit has explained that a court should review credibility determinations with “even more deference” and “reverse only those determinations that are patently wrong.” *Hohman v. Kijakazi*, 72 F.4th 248, 251 (7th Cir. 2023) (citation modified). Plaintiff calls the ALJ’s discussion of alleged inconsistencies in his statements “gratuitous[,]” but makes no argument that the ALJ misstated the record or was patently wrong. [15] 18. The ALJ was allowed to consider treatment notes (including the reported significant improvement after participating in physical therapy), [12-3] 2679, 2681–82, inconsistencies in plaintiff’s testimony, [*Id.*] 2679, 2681, and plaintiff’s ADLs,[10] [*Id.*] 2686, 2693, when weighing plaintiff’s allegations of pain. SSR 12-2p, 2012 WL 3104869, at *5; *Padua v. Bisignano*, 145 F.4th 784, 790 (7th Cir. 2025); *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018).

In summary, the Court does not agree with plaintiff that the ALJ’s assessment of plaintiff’s subjective allegations regarding his symptoms was impermissibly based on the absence of objective medical findings. Further, plaintiff fails to identify any way in which the ALJ’s analysis was patently wrong.

* * *

For all these reasons, the Court rejects plaintiff’s first ground for remand.

### B. The ALJ’s limitation of plaintiff to unskilled work is not reversible error.

Plaintiff’s final argument for remand is that the ALJ’s RFC restricting him to unskilled work “does not fully accommodate his documented deficits in mental functioning within the context of full-time work.” [15] 19. But the only documented deficits in mental functioning that plaintiff points to are from Dr. McElhinney. [*Id.*] 19–20. The ALJ evaluated Dr. McElhinney’s opinion regarding plaintiff’s mental

---

[10] Plaintiff also argues that, as part of the prior remand, this Court “explicitly rejected” the ability of the ALJ to consider the fact that plaintiff “resisted referrals to various types of treatment, including psychiatric,” or that plaintiff’s “ability to drive to the hearing indicated greater capabilities than [p]laintiff claimed.” [15] 18. This is incorrect. The Court cited *Yolanda B. v. Kijakazi*, No. 20 CV 3728, 2023 WL 3947722, at *7 (N.D. Ill. June 12, 2023), to explain that remand is required when the weighing of critical evidence is undermined by serious methodological error. *Michael G.*, 2024 WL 3791626, at *4. The parenthetical input by the Court after the *Yolanda B.* citation was simply adding context regarding the facts of that case. *Id.* And while, in its prior opinion, the Court expressed skepticism about the reliance the ALJ placed on plaintiff’s ability to drive to the hearing, *id.* at *4 n. 4, the ALJ provided ample additional reasoning in this opinion for his determination of plaintiff’s credibility. As the Seventh Circuit has explained, even if some reasons given by the ALJ are unsupported, “we would not reverse the credibility determination as long as the ALJ provided at least one reason to support the finding.” *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021).

limitations and assigned it "essentially no weight, being inconsistent with and unsupported by the evidence of record." [12-3] 2693. And, as discussed above, the Court finds no error in the ALJ's weighing of Dr. McElhinney's opinion.

Rather than rely on Dr. McElhinney's opinion, the ALJ viewed "the evidence in the light most favorable to the claimant, . . . [and found] that due to a combination of conditions that can be expected to affect concentration, persistence and pace, the claimant is reasonably limited to performing simple and routine tasks on a sustained basis with only routine breaks." [*Id.*] 2694; *see also* [*Id.*] 2657 (specifying that plaintiff has "no more than a mild limitation in concentration, persistence, or maintaining pace[.]"). "And there is no categorical rule that an ALJ may never accommodate [even] 'moderate' limitations in concentration, persistence, and pace with only a restriction to simple tasks." *Weber v. Kijakazi*, No. 20-2990, 2021 WL 3671235, at *5 (7th Cir. Aug. 19, 2021).

For these reasons, the Court rejects plaintiff's second ground for remand.

## Conclusion

Plaintiff's motion to reverse and remand [15] is denied, the Commissioner's motion for summary judgment [22] is granted, and the denial of benefits is affirmed.

Heather K. McShain

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: September 23, 2026**